IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-823-FL

| | |
|---|---|
| COY SMITH YOUNG, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-18, -22] pursuant to Fed. R. Civ. P. 12(c). Claimant Coy Smith Young ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on August 23, 2010, alleging disability beginning February 28, 2010. (R. 12, 162-63, 184). His claim was denied initially and upon reconsideration. (R. 12, 68-99). A hearing before an Administrative Law Judge ("ALJ") was held on June 25, 2012, at which Claimant, who was represented by counsel, Claimant's wife, and a vocational expert ("VE") appeared and testified. (R. 12, 32-67). On July 26, 2012, the

ALJ issued a decision denying Claimant's request for benefits. (R. 12-27). Claimant's request for review of the ALJ's decision by the Appeals Council was denied on October 1, 2013. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant contends the ALJ erred in evaluating Claimant's credibility and Residual Functional Capacity ("RFC"). Pl.'s Mem. [DE-18-1] at 7-10.

3

## IV. FACTUAL HISTORY

### A.  ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant has not engaged in substantial gainful employment since the alleged onset date. (R. 14). Next, the ALJ determined Claimant has the severe impairments of glaucoma and adjustment disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14-15). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in his activities of daily living and social functioning and moderate limitations in concentration, persistence and pace, with no episodes of decompensation of an extended duration. (R. 15). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with the following limitations: work that does not require fine visual acuity but can require gross vision, no exposure to hazards such as dangerous machinery, and perform simple, routine, repetitive tasks and non-production work. (R. 16). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 24-25). At step four, the ALJ concluded Claimant is unable to perform his past relevant work. (R. 25-26). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

4

national economy. (R. 26-27).

## B.  Claimant's Testimony at the Administrative Hearing

At the time of Claimant's June 25, 2012 administrative hearing, he was 54 years old and living with his wife and two children, ages 16 and 20. (R. 38). He completed high school and obtained an Associate Degree in Business Administration from a community college. *Id.* Claimant continued to work ten to fifteen hours a week at a cleaning company where he had been employed part-time for a year and his duties include vacuuming and taking out the trash at an office building. (R. 39). He had been moved around to work in different areas due to his vision problems and inability to see well in brightly or poorly lit spaces, and a coworker checks behind him because he overlooks things. (R. 50-51). Prior to his alleged onset date, Claimant worked at a bakery for six years, first as a transport driver delivering bread and then as a production worker when he could no longer drive commercially due to his vision. (R. 40-41). Eventually Claimant was terminated because there were no light-duty jobs available and there was a concern Claimant might be injured. (R. 41). Claimant worked as a delivery driver for two beverage companies for several years prior to working at the bakery. (R. 42).

Claimant explained that his poor vision is the most significant impediment to working. (R. 43). His right eye vision is severely impaired and he can barely see out of it. (R. 43, 55). His left eye vision is anywhere from 20/20 to 20/40 but is still blurry. (R. 43). Claimant's doctor attributes the continued blurriness to cataracts, and Claimant plans to have cataract surgery. (R. 55-57). Claimant continues to visit Duke for his eye problems, which is paid for by the state Division of Services for the Blind, but he was not taking any prescription medications at the time of the hearing. (R. 42-43, 49). The Division of Services for the Blind was also working to provide Claimant with

5

shades because sunlight is temporarily blinding. (R. 49-50). He also cannot see if it is too dark, so the lighting has to be just right for him to visualize. (R. 50). Claimant's vision is so poor in the rain that he has to pull off of the roadway when driving and one time it took him two hours to travel 15 miles to work. (R. 53). Claimant had surgery on both his eyes and afterward experienced significant pain that weakened him, but Claimant's vision is somewhat better since that time and he has recovered some of his strength. (R. 55).

Claimant also has muscle spasms and back soreness from years of lifting. (R. 44). He stretches and takes walks to ease the pain but has no insurance and does not receive treatment. *Id.* Claimant's stomach does not tolerate medicine well so he rarely takes pain relievers. (R. 45). Claimant denied emotional problems that affect his ability to concentrate or get along with others but indicated he felt stressed due to not working and being unable to take care of his family. (R. 44-45). After losing his job he cried often because he had no income and could not provide for his family, but joining a church has provided him the inspiration to keep going. (R. 53-54). Claimant believes that once he can provide for his family again he will feel happy. (R. 54).

Claimant drives three or four times a week, but sunlight bothers him and he drives better when it is cloudy. (R. 37). He tries to read until his eyes get tired, but he has difficulty focusing. (R. 38). Claimant helps with chores around the house but sometimes misses spots due to his vision. (R. 47). He spends a great deal of time at church and occasionally helps clean and do other jobs at the church with his wife. (R. 47-48).

### C. Claimant's Wife's Testimony at the Administrative Hearing

Claimant's wife, Ruby Young, testified at the administrative hearing. (R. 57-62). She and Claimant have been married for 24 years and she lives with him and sees him daily. (R. 58). Mrs.

6

Young testified that her husband cannot see as well as he used to; as a result, he leaves things behind and has significant difficulty driving because he cannot see in bright light or rain. (R. 58). At home, Claimant turns the lights off because they bother his eyes and leaves the stove on because he cannot see the red light. (R. 59). On one occasion he walked into a glass window or door at the bank because he could not see the glass. (R. 60). Mrs. Young assists her husband with most activities outside the home. *Id.* They do volunteer work cleaning at the church, and Mrs. Young checks behind Claimant to make sure he turns off the lights and puts away the cleaning supplies. *Id.* She described Claimant as "grouchy" and unable to focus since he stopped working and testified he has on average an equal number of good and bad days. (R. 61-62). She had not noticed any limitations on Claimant's ability to lift and carry or complaints about his back that would affect his ability to work. (R. 62).

### D. Vocational Expert's Testimony at the Administrative Hearing

Paula Day testified as a VE at the administrative hearing. (R. 63-66). After the VE classified Claimant's past work (R. 63), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant, who is able to perform work at any exertion level with the limitations of no work requiring fine visual acuity, no jobs involving a lot of reading or dealing with very small objects, must avoid hazards and work around dangerous moving machinery or similar hazards, and perform only simple, routine, repetitive, non-production work (R. 64). The VE testified that such an individual could perform the jobs of office cleaner, light exertion, SVP of 2, and DOT # 323.687-014; usher, light exertion, SVP of 2, and DOT # 344.677-014; and cafeteria attendant, light exertion, SVP of 2, and DOT # 311.677-010. (R. 64-65). The ALJ next asked the VE to assume the hypothetical individual has all the limitations described by Claimant,

7

including difficulty seeing to do any close work with his good eye, missing things, and being unable to work in bright light or rain. (R. 65). The VE testified that these limitations would preclude all work. *Id.* The VE confirmed that her testimony did not conflict with the Dictionary of Occupational Titles. *Id.*

Claimant's attorney asked the VE to assume the individual had trouble pouring water and spilled water on patrons, and the VE indicated the cafeteria attendant job would be eliminated. (R. 66). The attorney next asked the VE to assume the individual had to work alone, without the supervision of an assistant to check his work, and the VE indicated the available jobs would be reduced by 50 percent. *Id.*

## V. DISCUSSION

### A. The ALJ's Credibility and RFC Determinations

Claimant contends the ALJ erred in evaluating Claimant's credibility and RFC. Pl.'s Mem. at 7-10. Specifically, Claimant argues that his poor visual acuity prevents him from performing any work based on his testimony that his vision is blurry in his good eye and he has difficulty performing his current part-time work because he cannot see well enough and overlooks things. *Id.* at 8. Claimant further argues that his testimony in this regard is credible because it is supported by the medical evidence. *Id.* at 10 The Commissioner contends that Claimant fails to challenge the ALJ's reasoning or the sufficiency of the evidence with regard to the credibility determination and that substantial evidence supports the RFC determination. Def.'s Mem. [DE-23] at 5-8.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the

8

Case 5:13-cv-00823-FL Document 25 Filed 02/04/15 Page 8 of 14

record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses Claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

Furthermore, when assessing a claimant's RFC it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he

must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *3; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Here, the ALJ found Claimant's glaucoma to be a severe impairment (R. 14) and recognized Claimant's vision impairment was lifelong with some eye pain and vision loss that precludes work requiring fine visual acuity (R. 25).[2] However, the ALJ determined Claimant's statements regarding the limiting effects of his symptoms were not entirely credible (R. 24) and that Claimant was capable of performing medium work requiring no fine visual acuity, no exposure to hazards such as

---

[2] The ALJ also considered Claimant's muscle spasms and adjustment disorder in formulating the RFC. (R. 18-25). However, Claimant does not take issue with the ALJ's determination with respect to these impairments and therefore the discussion here is limited to Claimant's vision impairment.

dangerous machinery, and limited to simple, routine, repetitive tasks and non-production work (R. 21). In assessing Claimant's RFC, the ALJ thoroughly discussed Claimant's treatment records (R. 16-21), weighed the opinion evidence (R. 25), and considered the testimony of Claimant and his wife (R. 24-25). The ALJ explained the RFC determination as follows:

> [The RFC] assessment is supported by the medical evidence showing that the claimant's vision impairment secondary to glaucoma is not of disabling severity. The claimant was diagnosed with chronic angle closure glaucoma in both eyes in July 2009, and Dr. Robertson performed an iridotomy and iridectomy in the left eye. Dr. Robertson stated that the claimant had severe vision loss, greater in the right eye, and could no longer perform commercial driving. In February 2010, Dr. Robertson added that the claimant should avoid night driving, and he said that the claimant's pace may preclude manual labor. In March 2010, Ms. Halberg noted that the vision in the claimant's left eye was stable and within normal limits. Dr. McKinnon diagnosed chronic angle closure glaucoma of both eyes with decreased visual acuity and visual field. The claimant's best corrected vision was 20/20 in the left eye and 20/70 in the right eye. Dr. McKinnon performed a trabeculectomy with mitomycin C in both eyes. In August 2010, Dr. Hall stated that the claimant could return to work but should never drive motorized equipment. In September 2010, Dr. Masere reported the claimant had glaucoma but said there were no relevant visual limitations. In November 2010, Dr. Clark remarked that the claimant's glaucoma was advanced but under control, and he recommended vocational rehabilitation. In January 2011, Dr. McKinnon reported the claimant's visual acuity without correction was 20/40 in the left eye and 20/70 in the right eye. In June 2011, the claimant's visual acuity without correction had become worse, and the claimant was prescribed new glasses. In December 2011 and June 2012, the claimant's vision in the right eye was worse than 20/400. While the undersigned notes that the claimant has severe glaucoma in both eyes, his treating provider states it is currently under control. In addition, the undersigned recognizes that the claimant does not have useful vision in his right eye; however, his left eye has a best corrected visual acuity of 20/40. Therefore, the claimant's vision impairment does not preclude all substantial gainful work activity.

(R. 21-22). After summarizing the testimony of Claimant and his wife, the ALJ explained why he did not fully credit that testimony:

> As explained previously, although the evidence shows that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain and other symptoms alleged, the evidence does not support the claimant's allegations of the intensity and persistence of such pain and other symptoms.

11

> Specifically, the claimant testified that he cannot work because of his poor vision. However, in March 2010, the claimant's best corrected vision was 20/20 in the left eye, and 20/70 in the right eye. In January 2011, Dr. McKinnon reported the claimant's visual acuity without correction was 20/40 in the left eye and 20/70 in the right eye, and the claimant was prescribed glasses. The claimant testified that sunlight bothers him, and his wife testified that even indoor lighting hurts his eyes. However, the claimant is able to frequently attend church, where he cleans and does some manual labor when needed. It is reasonable to assume that if the claimant can tolerate the light inside of church, then he could tolerate the light inside of some places of work. The undersigned recognizes that the claimant's vision impairment is lifelong and results in some eye pain and vision loss, which would preclude work that requires fine visual acuity. However, the claimant's physician at Duke Eye Center has not advised the claimant to not work. In fact, the claimant has frequently told his medical providers that he wants to work. The claimant cannot perform work using his CDL, as his treating provider has advised the claimant not to work with moving machinery. However, it has been suggested that the claimant investigate vocational rehabilitation, which he has not yet done.

(R. 24-25).

In contesting the ALJ's RFC determination, Claimant does not take issue with the evidence cited by the ALJ. Rather, Claimant contends that his own testimony—that he has blurry vision in his good eye, has difficulty seeing in bright light or rain, has difficulty performing his cleaner job because he misses things, and cannot do close work—undercuts the ALJ's RFC determination. Pl.'s Mem. at 8, 10. However, the ALJ expressly addressed the testimony on which Claimant relies in his opinion and accounted for these limitations in the RFC. The ALJ acknowledged Claimant's testimony that his vision was blurry in his good eye, but also noted Claimant's testimony that his doctor indicated the blurriness was caused by cataracts that could be surgically removed and Claimant testified he was going to have the cataract surgery. (R. 24, 56-57). The ALJ also discussed Claimant's testimony that sunlight bothers him and that he has problems working if it is too light or too dark, but noted Claimant's testimony that the state Division of Services for the Blind was helping him get shades. (R. 24, 49-50). The ALJ further reasoned that if Claimant is able to tolerate the

12

light to do volunteer cleaning and other work at his church, he should be able tolerate the light in some other workplaces. (R. 25, 47-48). With respect to Claimant's contention that he cannot do close work and misses things, the ALJ accounted for this in the RFC by limiting Claimant to work requiring no fine visual acuity. (R. 25). *See French v. Colvin*, No. 7:12-CV-297-FL, 2014 WL 1331042, at *13 (E.D.N.C. Feb. 24, 2014) (unpublished) (memorandum and recommendation finding no step five error where the ALJ adequately addressed claimant's allegations of blurred vision in limiting claimant to jobs that do not require fine visual acuity), *adopted by* 2014 WL 1331031 (E.D.N.C. Mar. 31, 2014); *Bradberry v. Colvin*, No. 5:12-CV-190-D, 2013 WL 4776530, at *6-7 (E.D.N.C. Sept. 6, 2013) (unpublished) (adopting memorandum and recommendation rejecting claimant's argument that the ALJ erred in failing to account for her limitations due to glaucoma, where the ALJ gave sufficient reasons in support of his credibility determination regarding her vision and the finding that claimant's glaucoma only prevented her from performing fine, detailed tasks was supported by substantial evidence). Finally, the ALJ cited medical opinion evidence indicating that Claimant could return to work with the limitation of no driving motorized equipment (R. 326-27) and that Claimant's glaucoma was under control (R. 342-43). (R. 22). Claimant has cited no contradictory medical opinion suggesting he is more restricted than the ALJ determined.

Claimant is essentially asking the court to reconsider the testimonial and other record evidence and give controlling weight to Claimant's testimony regarding the extent of his limitations. It is not within the province of the court to reweigh the evidence, even if the court might reach a different result, where the ALJ has considered and analyzed all the relevant evidence and his decision is supported by substantial evidence, as is the case here. *Mastro*, 270 F.3d at 176 (citing

*Craig*, 76 F.3d at 589). Accordingly, the ALJ did not err in his credibility or RFC determinations.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-18] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-22] be ALLOWED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 4th day of February 2015.

Robert B. Jones, Jr.
United States Magistrate Judge